IN THE UNITED STATES DISTRICT COURT DISTRICT OF COLUMBIA

NEW LIFE EVANGELISTIC CENTER, INC., )
A Missouri Not-For-Profit Corporation )
1411 Locust Street )
St. Louis, Missouri 63103 )
                            *Plaintiff*, )
 )
v. )
 )
Michael O. Leavitt in his official capacity )
as SECRETARY of the )
U.S. Department of Health and Human Services )
200 Independence Ave, S.W. )
Washington, DC 20201 )        Civil Action No. _____
 )
    and )
 )
STEPHEN PERRY in his official capacity as )
ADMINISTRATOR )
U.S. General Services Administration )
1800 F Street N.W. )
Washington, DC 20405, )
 )
                            *Defendants.* )
_____)

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

    1.    Plaintiff, New Life Evangelistic Center, Inc. ("New Life"), a provider of a wide variety of services to homeless men, women and children in Missouri, Illinois, Kansas and Arkansas, seeks judicial review of the April 15, 2005 denial by defendant's department, the U.S. Department of Health and Human Services ("HHS"), of New Life's application to use a particular piece of surplus federal property located in St. Louis, Missouri (the L. Douglas Abram Federal Building) for homelessness assistance programs. HHS was required by the Stewart B. McKinney Homelessness Assistance Act to "give priority of consideration to uses [of surplus property] to assist the homeless." 42 U.S.C. § 11411(f)(3)(A). HHS not only failed to give

appropriate priority to New Life's application, its review and subsequent rejection of that application was arbitrary, capricious and contrary to law by, among other actions, departing from the scope of review required under the regulation governing applications for surplus federal property (45 C.F.R. § 12a.9), adding new application requirements not required under the regulations, and adopting objections from the St Louis Mayor's Office wholesale, without providing New Life any opportunity to respond or rebut the City's allegations. In short, HHS' decision to deny New Life's application failed to meet the requirements for proper, lawful agency action under the Administrative Procedure Act. The building in question is now in the control of Defendant Perry's department, the General Services Administration ("GSA"), and may be disposed of at any time.

### Jurisdiction and Venue

2. The Federal law at issue in this case is the Stewart B. McKinney Homelessness Assistance Act, 42 U.S.C. §11301 et seq., more specifically Title V of the Stewart B. McKinney Homelessness Assistance Act, 42 U.S.C. § 11411 et seq.

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1346. Judicial review of Defendants' actions is provided pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-706. Relief sought by Plaintiff is provided for in 28 U.S.C. §§ 2201, 2202 and 5 U.S.C. §§ 701-706.

4. Venue is proper under 28 U.S.C. § 1391(e).

### The Parties

5. Plaintiff, New Life Evangelistic Center, Inc., ("New Life") is a Missouri not-for-profit corporation in good standing. New Life's principal offices are located at 1411 Locust Street, St. Louis, Missouri 63103.

6. New Life has provided assistance to the homeless in the states of Missouri, Kansas, Arkansas and Illinois for over 32 years. It operates 17 homeless shelters, 6 homeless training centers, 20 free stores, and has an extensive broadcast training program for the homeless that includes 18 radio stations, 2 full analog TV stations, 2 digital TV stations, and 7 low powered TV stations. The approximate value of New Life's real estate assets and media holdings is $40 to $50 million dollars.

7. The broadcast training offered by New Life is part of the broader focus of New Life, to provide a hand up to the homeless and help them break the cycle of homelessness, rather than a hand out. New Life trains the homeless in construction techniques that are energy friendly, and in the uses of many different forms of renewable energy and energy conservation programs. New Life trains the homeless in reporting, typing and layout work for the production of three free newspapers. New Life empowers the homeless to care for themselves and live independently. It focuses its resources on care and training of the homeless as trainees running its operations, while keeping its paid staff to a total of 10 employees.

8. Defendant Michael O. Leavitt is the Secretary of HHS with offices at 200 Independence Avenue, S.W., Washington, DC 20201. He is named as a defendant in this lawsuit in his official capacity as Secretary of HHS.

9. Defendant Stephen Perry is the Administrator of the United States General Services Administration ("GSA") with offices at 1800 F Street N.W., Washington, DC 20405. He is named as a defendant in this lawsuit in his official capacity as Administrator of GSA.

10. Defendants collectively are the heads of agencies of the United States government and control the Federal Property known as the L. Douglas Abram Federal Building located at

1520 Market Street, St. Louis, Missouri 63102, also known as GSA Control Number: 7-G-MO-0636, HUD Assigned Property Number: 54200330012 ("1520 Market Street").

### The Stewart B. McKinney Act

11.  In passing the Stewart B. McKinney Homelessness Assistance Act (the "McKinney Act"), Congress found that the federal government "has a clear responsibility and an existing capacity" to help meet "an immediate need and unprecedented crisis due to the lack of shelter for a growing number of individuals and families." 42 U.S.C. §11301 (a) (1), 11301 (a) (6). Thus, as part of the McKinney Act, Section 501 (also known as Title V), codified at 42 U.S.C. §11411, was enacted to provide a program for addressing what Congress found to be the greatest obstacle facing organizations providing help to the homeless, "the lack of suitable buildings to serve as shelters." H.R.Rep. No. 10, 100th Cong., 1st Sess., pt.1, at 17 (1987), 1987 U.S.C.C.A.N. 362.

12.  Section 501 addresses this problem by establishing a procedure for making vacant federal properties available to assist the homeless. First, the Department of Housing and Urban Development ("HUD") collects information about properties that are described as unutilized or underutilized by the agency controlling the properties 42 U.S.C. §11411(a). After collecting the information, HUD must then determine which of the unutilized or underutilized properties "are suitable for use for facilities to assist the homeless." *Id.* After a property has been determined by HUD to be suitable, the controlling agency has thirty days to either (i) declare the property "excess" to the agency's need, (ii) make the property available for interim use, or (iii) provide a statement explaining why the property cannot be declared excess or made available on an interim basis. *Id.* §11411 (b)

13. Once the property is declared "excess" to the agency's need, HHS and GSA "shall in accordance with federal law, take such action as may be necessary to make buildings and property" available to organizations assisting the homeless. *Id.* §11411 (c). The reference to "other federal law" in this section incorporates the Federal Property and Administrative Services Act ("FPASA"), 40 U.S.C. § 471 *et seq.*, into the McKinney Act. Under FPASA, excess property must be reported to GSA by the agency holding the property. GSA then subjects the property to federal screening (unless waived), which means that GSA notifies other federal agencies of the availability of the property and allows them to submit to GSA a request for transfer. 41 C.F.R. §§101-47.201-1, 101-47.203-5. Upon a determination by GSA that a requested transfer is in the "best interest" of the United States, the reporting agency transfers the property to the requesting agency. *Id.* § 101-47.203-7 (b).

14. Once it is determined that the property is excess and no later than 15 days after the last day of the 45 day period under 42 U.S.C. §11411 (b)(1), a notice of the availability of the property must be published in the Federal Register, stating that the property has been reviewed and is available for application for use to assist the homeless. 42 U.S.C. §11411(c). This publication must include a description and location of the property and the current classification of the property as unutilized, underutilized, excess property, or surplus property. *Id.* §11411(c)(B).

15. A representative of the homeless may submit an application to HHS for any property that has been published under this section as available for application for use to assist the homeless. *Id.* §11411(e). The representative of the homeless has 90 days to submit a completed application for the property. *Id.* No later than 25 days after receipt of a completed application, HHS shall review, make all determinations, and complete all actions on the

application. HHS shall maintain a written public record of all action taken in response to an application. *Id.*

16.     In disposing of surplus property by deed or lease under section 40 U.S.C. § 484, the GSA and HHS shall give priority of consideration to uses to assist the homeless, unless they determine that a competing request for the property under 40 U.S.C. §484(k) is so meritorious and compelling as to outweigh the needs of the homeless. *Id.* §11411(f)(3)(A).

### 1520 Market Street Becomes Available as Suitable For Use to Assist the Homeless

17.     On September 12, 2003, HUD published and identified in the *Federal Register* the L. Douglas Abram Federal Building 1520 Market Street, St. Louis, ("1520 Market Street") Missouri as suitable for use to assist the homeless. *See* 68 Fed. Reg. 53792, 53793.

18.     On September 17, 2003, New Life received notice from the GSA Greater Southwest Region that under the provisions of Title V of the McKinney Act, that 1520 Market Street "was determined suitable by HUD for homeless use," and because "no further Federal requirement exists, the subject property was made available for homeless use" by GSA.

19.     The offer by GSA to apply for 1520 Market Street was the first time since the creation of the McKinney Act program that homeless assistance providers in St. Louis were given the opportunity to apply for surplus property located in the City of St. Louis.

### New Life's Application to Acquire 1520 Market Street

20.     On September 26, 2003, New Life filed its formal written expression of interest for the property at 1520 Market Street and, accordingly, that same day HHS forwarded instructions for completing the application for the property. New Life was the only entity to file an application for the property at 1520 Market Street under the McKinney Act.

21. The application required completion of ten detailed questions outlining various items of importance, including a description of the proposed services to be furnished, the need for the services in the community, physical layout, cost estimates, financial information and other information and certifications. The application instruction packet reiterated that all applications would be reviewed within 25 days according to the five evaluative criteria set forth in 45 C.F.R. §12a.9 (i.e., services offered, need, experience, financial ability, and implementation time).

22. On December 22, 2003, New Life filed its application with HHS. After HHS denied New Life's application, New Life filed for a motion for preliminary injunction and a complaint for injunctive and declaratory relief in this Court on July 9, 2004. The parties subsequently entered into a Joint Stipulation of Remand, remanding the case to HHS in order to allow Plaintiffs to submit, and HHS to review, a new application to acquire the property at 1520 Market Street.

23. On February 14, 2005, New Life submitted a new application to HHS thoroughly answering all ten questions and submitting supporting documentation in the form of forty-one attachments to the application. The thrust of New Life's application was to provide emergency and transitional housing for families, women and children, and disabled men, groups traditionally not well served by homelessness assistance providers. Further, New Life proposed to provide education facilities so that the homeless may obtain a GED, or gain technical training for operation and broadcast technology of a television or radio station (New Life owns such broadcast facilities). A "free store" was also proposed to provide for the necessary items that the homeless often are unable to purchase. Additionally, because many shelters in St. Louis do not allow homeless persons access to their shelters during the daytime, which forces the homeless

onto the streets or into the parks during the daylight hours, New Life proposed to provide a daytime shelter. As set forth in its application, these programs and uses of the 1520 Market Street property would require few modifications to the existing facilities and could be provided in an expedient fashion.

24. New Life's application provided great detail regarding the specifics of services to be provided, the need for the services in St. Louis, staffing and management, service delivery, cost estimates, financial ability to delivery the services, coordination with other service providers, community support for New Life's application, and New Life's successful experience in delivering the proposed services.

25. In its application, New Life indicated that it would increase the number of staff in many areas, including the Drug/Alcohol Treatment and Counseling, Mental Health Referrals, Community Resource Center, Job Placement Services, and House Placement Services, "as the demand [for the services] increases."

26. New Life also stated in its application that it did not anticipate any major construction on the subject property, however, "[i]f additional need should arise, [its] long history of successful fundraising, combined with media assets over $40 million dollars, will enable [it] to provide the necessary funds to both operate and improve the facility."

27. New Life's application emphasized that it "has established referral relationships with other organizations in order to ensure client access to a comprehensive array of services other than what is offered" from New Life.

28. On February 22, 2005, the Mayor of the City of St. Louis, Francis G. Slay, submitted a lengthy "Filing in Opposition to McKinney Act Application" to HHS. In her

opposition, Mayor Slay cited and enclosed supporting letters citing, among others concerns, the following objections to New Life's application:

    a.    "Placing the country's largest homeless shelter on a major thoroughfare in the heart of our employment, tourism and government district would do irreparable damage to both downtown St. Louis and the entire city by threatening the downtown economy."

    b.    The City desires to bring the Kiel Opera House "back to life" and a developer has come forward with a proposal to "refurbish and reopen" the Opera House. "However, the proposed development is contingent on the City buying the Abram Building" because it is adjacent to the Opera House and is needed as a parking facility for Kiel Opera House visitors.

    c.    "The days of concentrating a large number of impoverished people in large isolated buildings as was done in public housing projects, have long passed . . . .Based on what we know about our City, we believe St. Louis needs more permanent housing beds for the chronically homeless, additional Assertive Community Treatment ('ACT') teams . . . [and] [o]ur 'Continuum of Care' provider network has aggressive plans to . . .implement[] the 'ACT' model."

    d.    New Life's application does not propose an adequate number of security personnel to protect the building;

    e.    It is unlikely that New Life has the financial ability to carry out the proposed program: "Reverend Larry Rice has been trying to raise money on his television station for this project. It is clear from those broadcasts that he does not have the resources to take on an endeavor this vast."

 f. New Life does not have "demonstrated prior success in operating similar programs" because it has "never operated anything nearly this large."

 g. New Life does not have the support of federal, state and local authorities.

 h. New Life is not a participant in the City of St. Louis Continuum of Care Network (a network of 35 homeless service providers).

29. HHS did not provide New Life an opportunity to comment or refute the objections set forth in Mayor Slay's February 22, 2005 opposition filing.

30. On April 15, 2005, HHS denied New Life's application ("Final Decision"), citing deficiencies in the areas of program administration/service delivery, experience, and financial ability.

31. Specifically, the Final Decision rests upon the following bases:

 a. National studies show that a significant majority of homeless persons suffer from a wide range of disabling conditions, including substance abuse problems and mental health disabilities. The qualifications of New Life's proposed staff and its proposed staff-to-homeless person ratio are inadequate to address the needs of homeless persons with disabilities. "Research" suggests that Assertive Community Treatment ("ACT") is the "ideal model" for treating mentally-ill and substance-abusing homeless persons. ACT recommends a higher staff-to-homeless person ratio than proposed by New Life.

 b. The number of proposed security-personnel to protect the facility is inadequate.

 c. New Life has failed to demonstrate experience relevant to operate a proposed program of this size and scope.

  d. New Life's application is missing letters of support from Federal and local officials.

  e. "Although not a [McKinney Act] requirement," New Life's failure to participate in the City of St. Louis Continuum of Care will have a negative impact on the services to be provided and will decrease the availability of additional services made available by different homeless service providers.

  f. New Life's estimated funding sources to finance to the program are too speculative.

  g. New Life has underestimated program and facility operating costs.

  h. New Life has failed to describe how its staff will be hired, deployed, and managed.

  32. As set forth in Mayor Slay's opposition to New Life's application, the City of St. Louis seeks to acquire 1520 Market Street to transfer the property to Donald Breckenridge, a private developer, for the purposes of tearing the building down to create a parking garage for an adjacent private development of the Kiel Opera House. Breckenridge lobbied other non-profits, including the Salvation Army, and convinced them not to apply for the property at 1520 Market Street. Breckenridge also met with GSA officials before New Life's application was initially denied "to try to show them [GSA] the importance of his project."

  33. Since HHS rejected New Life's application, GSA now controls the disposition of 1520 Market Street. 45 C.F.R. §12a.12. GSA is preparing to dispose of the building in the near future.

## Causes of Action

34. Defendants, in making their Final Decision denying New Life's application to lease the 1520 Market Street property, have violated the Administrative Procedure Act ("APA") by acting arbitrarily, capriciously and contrary to law in a number of ways including, but not limited to:

   a. by failing to give priority to New Life's application to use 1520 Market Street for homeless programs as required under the McKinney Act, 40 U.S.C. § 11411(f)(3)(A);

   b. by ignoring 45 C.F.R. § 12a.9(c) regulations requiring HHS to rely primarily on the information in New Life's application, and instead relying heavily on information from officials within the City of St. Louis without providing New Life any opportunity to comment and/or refute that information;

   c. by creating new application requirements not required under 45 C.F.R. § 12a.9(c), including, but not limited to, a preference for the ACT case-management model, security-personnel requirements, and participation in the St. Louis Continuum of Care Network, without providing New Life notice of such new requirements;

   d. by stating that New Life is not financially able to operate the facility and proposed program despite New Life's assertion in its application that, among other sources of funding, its media assets of over $40 million dollars enable it to provide the necessary funds to run the program and operate and improve the facility;

   e. by stating that New Life's proposed staff is insufficient to operate the programs proposed by New Life despite New Life's representations that several staff positions would be increased "as demand increases;"

## Injury

35.     New Life and the individuals and families that it serves have been forever deprived of the use of 1520 Market Street building.

36.     Without the 1520 Market Street building, programs and services for the homeless will not be developed or implemented thereby causing harm to homeless individuals and families in the St. Louis area, persons served or who could be served by New Life if its application was approved as required by the McKinney Act.

## Relief

WHEREFORE Plaintiff respectfully requests that this Court:

1.     Vacate the Final Decision as null and void and enjoin any further action to implement that decision;

2.     Enjoin the Defendants from transferring the property known as the L. Douglas Abram Federal Building 1520 Market Street, St. Louis, Missouri GSA Control Number: 7-G-MO-0636, HUD Assigned Property Number: 54200330012, to any other person or entity;

3.     Remand New Life's application to HHS and order that HHS either approve New Life's application or give New Life a full and fair opportunity to submit additional evidence in response to allegations asserted by other parties in opposition to New Life's application and, in issuing a new decision on its application, order that HHS fully and fairly consider New Life's additional responses.

4.     Order HHS to recuse all individuals involved in the April 15, 2005 Final Decision from involvement in any subsequent decision involving New Life and 1520 Market Street;

5.     Award New Life its costs and reasonable attorneys' fees; and,

6.     Direct such other and further relief as the Court deems just and warranted.

|  | Respectfully submitted, |
|---|---|
| ___/S/_____ | _____ |
| Patrick O. Boyle | Edward T. Waters (Bar No. 422461) |
| Daniel P. Boyle | Grace B. Culley (Bar No. 486713) |
| The Boyle Law Firm, L.L.C. | Feldesman Tucker Leifer Fidell LLP |
| 755 Rue Street Francois | 2001 L Street, N.W., Second Floor |
| Florissant, Missouri 63031 | Washington, D.C. 20036 |
| (314) 838-4500 (telephone) | (202) 466-8960 (telephone) |
| (314) 838-7727 (facsimile) | (202) 293-8103 (facsimile) |
| Date: July 22, 2005 | *Attorneys for Plaintiffs* |