### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

NEW LIFE EVANGELISTIC CENTER, INC.,    )
    )
             *Plaintiff,*    )
    )
       *v.*    )
    )
MICHAEL O. LEAVITT, Secretary of the    )
  U.S. Department of Health and Human Services,    )
    )    Civil Action No. 1:05-cv-01449 RJL
       and    )
    )
DAVID L. BIBB, Acting Administrator,[1]    )
  U.S. General Services Administration    )
    )
           *Defendants.*    )
_____)

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Michael Leavitt, Secretary, U.S. Department of Health and Human Services, and David L. Bibb, Acting Administrator, U.S. General Services Administration, through the undersigned counsel, respectfully move this Court for summary judgment under Fed. R. Civ. P. 56(c).  As set forth in the accompanying memorandum of points and authorities, there are no genuine issues in dispute and Defendants are entitled to judgment as a matter of law.  Pursuant to Local Rule 7(a) and (c) respectively, a memorandum of points and authorities supporting this motion and a proposed order consistent with the relief requested herein are attached.

---

[1]  Pursuant to Fed. R. Civ. P. 25(d)(1), David L. Bibb, Acting Administrator, U.S. General Services Administration, should be automatically substituted for the former Administrator, Stephen Perry.  See Fed. R. Civ. P. 25(d)(1).

January 25, 2006                        Respectfully submitted,


                                        /s/
                                        _____
                                        KENNETH L. WAINSTEIN, D.C. BAR # 451058
                                        United States Attorney


                                        /s/
                                        _____
                                        R. CRAIG LAWRENCE, D.C. BAR # 171538
                                        Assistant United States Attorney


                            _____/s/_____
                                        MEGAN L. ROSE, N.C. Bar #28639
                                        Assistant United States Attorney
                                        555 4th Street, N.W. - Civil Division
                                        Washington, D.C.  20530
                                        (202) 514-7220

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NEW LIFE EVANGELISTIC CENTER, INC., ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| *v.* ) | |
| ) | |
| MICHAEL O. LEAVITT, Secretary of the ) | |
|   U.S. Department of Health and Human Services, ) | |
| )   Civil Action No. 1:05-cv-01449 RJL | |
|   and ) | |
| ) | |
| STEPHEN PERRY, Administrator of the ) | |
|   U.S. General Services Administration ) | |
| ) | |
| *Defendants*. ) | |
| _____ ) | |

## DEFENDANTS' STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE

_____Pursuant to LCvR 7.1(h), Defendants Michael Leavitt, Secretary, U.S. Department of

Health and Human Services ("HHS"), and David L. Bibb, Acting Administrator, U.S. General

Services Administration ("GSA"), respectfully submit this statement of material facts as to which

there is no genuine dispute.

1.      Defendant Michael O. Leavitt is the Secretary of HHS, and is named as a

defendant in this lawsuit in his official capacity as HHS Secretary.  Compl. ¶ 8.

2.      Defendant David L. Bibb is the Acting Administrator of GSA, and is named as a

defendant in this lawsuit in his official capacity as Acting GSA Administrator.[1]  Compl. ¶ 9.

---

[1] Although the Complaint names Stephen Perry, Administrator, GSA, pursuant to Fed. R.
Civ. P. 25(d)(1), David L. Bibb, Acting Administrator, GSA, should be automatically substituted
in his place.  See Fed. R. Civ. P. 25(d)(1).

3.      This action concerns improved real property known as the L. Douglas Abram Federal Building ("the Abram Building"), located at 1520 Market Street, St. Louis, Missouri 63102.   Compl. ¶¶ 1, 10; Answer ¶ 1.

4.      The United States of America holds fee simple title to the Abram Building.  Exh. 56.

5.      The Abram Building is a 45-year-old, 471,024 square-foot facility.  See Exh. 18 (AR 1609-13), 56 (AR 1895-2162); see also Exh. A at 5 (AR at 1753).

6.      GSA maintains custody and control of the Abram Building.  Compl. ¶ 10; Answer ¶¶ 1, 10.

7.      On September 17, 2003 GSA determined that, under Title V of the McKinney Act, the Abram Building was "surplus" federal property.  Exh. 7 (AR 257-58).  Because the property was "determined suitable" by HUD "for homeless use," and "no further Federal requirement exists," GSA made the property available for homeless use.  Id.; Compl. ¶ 18.

8.      On September 26, 2003, Plaintiff submitted to HHS an "expression of interest" in the Abram Building.  Compl. ¶ 20; Answer ¶20.

9.      On December 22, 2003 Plaintiff filed an application for the Abram Building with HHS ("the withdrawn application"), which Defendant HHS denied on April 26, 2004.  Compl. ¶ 22; Answer ¶ 20.

10.     On July 9, 2004, Plaintiff filed in this Court a motion for preliminary injunction and a complaint for injunctive and declaratory relief.  Compl. ¶ 22; see also New Life Evangelistic Center, Inc. v. Leavitt, 04-1159 (RJL), Docket Entry No. 1.  On November 14, 2004, the parties entered into a Joint Stipulation of Remand ("Joint Stipulation"), remanding the

2

case to HHS in order to allow Plaintiff to submit a new Title V application for HHS review and

decision.  Compl. ¶ 22; see also New Life Evangelistic Center, Inc. v. Leavitt, 04-1159 (RJL),

Docket Entries No. 14, 15; Exh. 8 (AR 261).

11.    On February 14, 2005, in accordance with the Joint Stipulation, Plaintiff

submitted an application to HHS ("the application"), which contained a voluminous amount of

material concerning Plainitff's proposed program for the Abram Federal Building, including

multiple attachments, a signature petition and a video cassette presentation.  Compl. ¶ 23; Exh.

10, 11 (AR 265-1571).

12.    On February 22, 2005, the Mayor of the City of St. Louis, Francis G. Slay,

submitted to HHS an unsolicited document entitled "City of St. Louis Filing in Opposition to

McKinney Act Application."  Compl. ¶ 28; Exh. 57 (AR 2163-2243).

13.    On April 15, 2005, HHS issued a six-page decision letter, denying Plaintiff's

application based upon its determinations that Plaintiff's application was materially deficient as

to three of five evaluation criteria: "services offered," "experience," and "financial ability."  See

Exh. A (Exh. 42, AR 1749-54); see also 45 C.F.R. § 12a.9(e)(2); Compl. ¶ 30.

14.    Plaintiff filed its complaint challenging the HHS decision in this Court on July 22,

2005.  Compl., Docket Entry No. 1.


                    Respectfully submitted,


                     /s/
                    KENNETH L. WAINSTEIN, D.C. BAR # 451058
                    United States Attorney

/s/
R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney


/s/
MEGAN L. ROSE, N.C. Bar # 28639
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. - Civil Division
Washington, D.C.  20530
(202) 514-7220


Of Counsel:

Christian C. Mahler, Senior Attorney
Office of the General Counsel, Public Health Division
U.S. Department of Health & Human Services

Samuel E. Skare, Regional Counsel (6L)
U.S. General Services Administration

4

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NEW LIFE EVANGELISTIC CENTER, INC., | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| *v.* | ) | |
| | ) | |
| MICHAEL O. LEAVITT, Secretary of the | ) | |
| U.S. Department of Health and Human Services, | ) | |
| | ) | Civil Action No. 1:05-cv-01449 RJL |
| and | ) | |
| | ) | |
| DAVID L. BIBB, Acting Administrator, | ) | |
| U.S. General Services Administration | ) | |
| | ) | |
| *Defendants.* | ) | |

_____

**MEMORANDUM OF POINT AND AUTHORITIES**
**IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

_____Defendants Michael Leavitt, Secretary, U.S. Department of Health and Human Services

("HHS" or "the Department"), and David L. Bibb, Acting Administrator, U.S. General Services

Administration ("GSA"), through the undersigned counsel, respectfully moves this Court for

summary judgment under Fed. R. Civ. P. 56(c).

Plaintiff New Life Evangelistic Center, Inc. ("New Life") brings the above-captioned

action, challenging the decision of HHS that denied Plaintiff's application to use the L. Douglas

Abram Federal Building, which is located in St. Louis, Missouri, and currently controlled by

GSA, for homeless assistance programs.  Compl. at 1; see also Exh. 42, AR 1749-1754.[1]

Plaintiff further seeks that the Court enjoin Defendants HHS and GSA from transferring the

_____

[1]  For the Court's convenience, the April 15, 2005 HHS decision letter is attached to this
motion as Exhibit A.  Defendants note that the CD-Rom version of the administrative record,
which was previously filed with the Court, inadvertently omitted page 6 of the decision letter.
See Exh. 42, AR 1749-54.

property to any other person or entity.  Compl. at 13.  For the reasons set forth below, summary

judgment should be granted for Defendants because there are no genuine issues in dispute and

Defendants are entitled to judgment as a matter of law.

## BACKGROUND

**I.    Statutory and Regulatory Scheme**

In an effort to ameliorate the plight of the nation's homeless population, Congress

enacted the McKinney-Vento Homeless Assistance Act ("the McKinney Act").[2]  See, e.g., 42

U.S.C. § 11301(b)(one of the purposes of the statute is "to use public resources and programs in

a more coordinated manner to meet the critically urgent needs of the homeless of the Nation.").

Title V of the McKinney Act, 42 U.S.C. § 11411, directs the federal government to make

available suitable excess, surplus, unutilized or underutilized federal real property for use by the

homeless.  42 U.S.C. § 11411.  Under this statutory scheme, Congress promulgated that

homeless uses for federal property must be given priority of consideration over other competing

disposal opportunities.  See 42 U.S.C. § 11411(d)(4)(A); see also 136 Cong. Rec. H13909 (daily

ed. October 25, 1990).

Accordingly, in 1991, three federal agencies, the Department of Housing and Urban

Development ("HUD"), HHS, and GSA, jointly promulgated regulations implementing the

McKinney Act.  45 C.F.R. Part 12a.  Under the statute and regulations, HUD is responsible for

the collection of information regarding excess, surplus, unutilized or underutilized properties,

and the agency makes determinations concerning whether particular properties are suitable for

---

[2]  In 2000, Congress enacted Public Law 106-400, renaming the "Stewart B. McKinney
Homeless Assistance Act" the "McKinney-Vento Homeless Assistance Act."

use by the homeless.  42 U.S.C. § 11411(a).  HHS is charged with accepting and evaluating

applications from homeless service providers and may either approve or disapprove such

applications.  42 U.S.C. § 11411(e); 45 C.F.R. § 12a.9.[3]  GSA is generally the "disposal agency"

with statutory authority to control the real property.  See id.; see also 40 U.S.C. § 550(d)(1); 45

C.F.R. § 12a.10.

The regulations outline application requirements for acquiring federal property and

provide that HHS's evaluation will "generally...be limited to the information contained in the

application."  45 C.F.R. § 12a.9(c); see also Application Package, AR 5.  Completed Title V

applications must be submitted to HHS within 90 days after the applicant files an expression of

---

[3] Under the regulations, Congress assigned this function to HHS because: (1) Congress acknowledged that homelessness is a public health emergency that deserves the attention and expertise of the Nation's public health officials and (2) HHS operated (and continues to operate) a public health benefit conveyance program that utilizes the Department's expertise in facilities and public health infrastructure to convey surplus federal property for hospitals, clinics, scientific research, and the like.  See 45 C.F.R. Part 12.

The Federal Property and Administrative Services Act of 1949 ("FPASA") already provided that HHS would make suitable surplus real property available as a "public health use" under public benefit disposal provisions.  42 U.S.C. § 11411(f)(1); 40 U.S.C. §§ 550(a)-(d). Since the enactment of FPASA in 1949, HHS (formerly the Department of Health, Education, and Welfare) has operated a public health benefit conveyance program that conveys surplus federal real property for public health purposes such as hospitals, clinics, water treatment facilities, and scientific research.  See 40 U.S.C. § 550(d); 45 C.F.R. Part 12.  Furthermore, a long history of HHS programs specifically designed to meet the needs of homeless persons also established HHS's expertise in homeless assistance policy.  In addition to the Federal Property Assistance Program, HHS is responsible for major programs such as Health Care for the Homeless, Programs for Runaway and Homeless Youth, Projects for Assistance in Transition for Homelessness and Cooperative Agreements for the Development of Comprehensive Drug and Alcohol Treatment for Systems for Homeless Persons.  See Exh. B, HHS 2004 United States Interagency Council on Homelessness at 1.  During fiscal year 2004, these programs distributed over $335 million in services to people experiencing homelessness in the United States.  Id. Thus, in delegating authority under the McKinney Act to HHS, Congress acknowledged that the blight of homelessness in the nation constituted a grave public health concern that commanded the attention of the Department's public health infrastructure and facilities expertise.

3

interest with the Department.  45 C.F.R. §12a.9(d).  After HHS determines the application

complete, HHS then has 25 days within which to evaluate the application and make a decision.

See 45 C.F.R. § 12a..9(e).

HHS reviews Title V applications based upon the five evaluation criteria set forth in 45

C.F.R. § 12a.9(e)(2):

> (I) *Services offered.*  The extent and range of proposed services, such as meals, shelter,
> job training, and counseling.
> (ii) *Need.*  The demand for the program and the degree to which the available property
> will be fully utilized.
> (iii) *Implementation Time.*  The amount of time necessary for the proposed program to
> become operational.
> (iv) *Experience.*  Demonstrated prior success in operating similar programs and recom-
> mendations attesting to that fact by Federal, State, and local authorities.
> (v) *Financial Ability.*  The adequacy of the funding that will likely be available to run the
> program fully and to operate the facility.

C.F.R. § 12a.9(e)(2).  The regulations further provide that "[a]dditional evaluation factors may be

added as deemed necessary by HHS," and that HHS may revise its Title V application package to

reflect the inclusion of the additional evaluation criteria.  45 C.F.R. § 12a.9(e)(3).

When HHS approves an application, HHS must notify the applicant and request that GSA

assign the property to HHS for subsequent conveyance to the applicant.  45 C.F.R.§ 12a.10(b).

Generally, GSA then will assign the property to HHS, unless GSA determines that another

disposal need is so "meritorious and compelling" that it outweighs the needs of the homeless.  42

U.S.C. § 11411(f)(3)(A); 45 C.F.R. § 12a.10(a)(2).  Upon receipt of the assignment, HHS

executes a lease in accordance with the procedures and requirements set out in 45 C.F.R. Part

12.[4]  45 C.F.R. § 12a.10(b)(1).

---

[4] Title V applicants are entitled to a 100 percent public benefit discount, and receive the
real estate at no cost.  45 C.F.R. Part 12.  The McKinney Act grantee, like other public benefit

## II.    Factual and Procedural Background

The final agency action subject to judicial review in this cause of action is the April 15, 2005 HHS decision, which denied Plaintiff's application to use the L. Douglas Abram Federal Building ("the Abram Building"), currently controlled by GSA, for homeless assistance programs.

The United States of America holds fee simple title to the Abram Building, a 45-year-old, 471,024 square-foot facility, located at 1520 Market Street, St. Louis, Missouri 63102. See Compl. ¶¶ 1, 10; Answer ¶ 1; Exh. 18 (AR 1609-13), 56 (AR 1895-2162); see also Exh. A at 5 (AR at 1753). GSA currently maintains custody and control of the Abram Building. Compl. ¶ 10; Answer ¶¶ 1, 10. On September 17, 2003 GSA determined that, under Title V of the McKinney Act, the Abram Building was "surplus" federal property. Exh. 7 (AR 257-58). Because the property was "determined suitable" by HUD "for homeless use," and "no further Federal requirement exists," GSA made the property available for homeless use. Id.; Compl. ¶ 18.

On September 26, 2003, Plaintiff submitted to HHS an "expression of interest" in the Abram Building. Compl. ¶ 20; Answer ¶20. On December 22, 2003 Plaintiff filed an application for the Abram Building with HHS ("the withdrawn application"), but Defendant HHS denied Plaintiff's application on April 26, 2004. Compl. ¶ 22; Answer ¶ 20. On July 9, 2004, Plaintiff filed in this Court a motion for preliminary injunction and a complaint for injunctive and declaratory relief. Compl. ¶ 22; see also New Life Evangelistic Center, Inc. v.

---

conveyance recipients, must utilize the property in accordance with the approved application for a period of years. See 45 C.F.R. §§ 12a.10; 12.9.

Leavitt, 04-1159 (RJL), Docket Entry No. 1.  However, on November 14, 2004, the parties

entered into a Joint Stipulation of Remand ("Joint Stipulation"), remanding the case to HHS in

order to allow Plaintiff to submit a new Title V application for HHS review and decision.[5]

Compl. ¶ 22; see also New Life Evangelistic Center, Inc. v. Leavitt, 04-1159 (RJL), Docket

Entries No. 14, 15; Exh. 8 (AR 261).

On February 14, 2005, in accordance with the Joint Stipulation, Plaintiff submitted a new

application to HHS ("the application"), which contained a voluminous amount of material

concerning Plainitff's proposed program for the Abram Federal Building, including multiple

attachments, a signature petition and a video cassette presentation.  Compl. ¶ 23; Exh. 10, 11

(AR 265-1571).  Shortly thereafter, on February 22, 2005, the Mayor of the City of St. Louis,

Francis G. Slay, submitted to HHS an unsolicited document entitled "City of St. Louis Filing in

Opposition to McKinney Act Application."  Compl. ¶ 28; Exh. 57 (AR 2163-2243).

After 60 days of internal deliberations in order to evaluate Plaintiff's application

according to the criteria set forth in the regulations, on April 15, 2005, HHS issued a six-page

decision letter, denying Plaintiff's application.  See Exh. A (Exh. 42, AR 1749-54); see also 45

C.F.R. § 12a.9(e)(2); Compl. ¶ 30.  HHS determined that although Plaintiff's filed application

was technically complete, it was materially deficient as to three of five evaluation criteria:

---

[5]  Under the terms of the joint stipulation of remand entered into on November 14, 2004,
Plaintiff withdrew its December 22, 2003 application and HHS withdrew its April 26, 2004,
application decision. New Life Evangelistic Center, Inc. v. Leavitt, 04-1159 (RJL), Docket
Entries No. 14, 15. Thus, facts, evidence, or other argument derived from or pertaining to either
the December 22, 2003 application or April 26, 2004 application decision are irrelevant to a
determination on the merits of the HHS decision sub judice.  On June 30, 2005, this Court
entered an order precluding the parties from making any further filings in the remanded case. Id.,
Docket Entry No. 22.

"services offered," "experience," and "financial ability."  Id.; see also Exh. 12-41 (AR 1572-1747).

Plaintiff subsequently filed this Complaint on July 22, 2005, seeking judicial review of the April 15, 2005 HHS decision letter.

## STANDARD OF REVIEW

Under Rule 56, summary judgment is required when the pleadings and evidence demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995).   A genuine issue of material fact is one that would change the outcome of the litigation.  See Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 243 (1986).  While all evidence and the inferences drawn therefrom must be considered in the light most favorable to the nonmoving party, see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), summary judgment should be granted if the moving party submits "affirmative evidence that negates an essential element of the nonmoving party's claim" or demonstrates "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."  Celotex, 477 U.S at 331.[6]  The nonmoving party has the burden of establishing more than the "mere existence of a scintilla of evidence" demonstrating a genuine issue in dispute for purposes of defeating the moving party's

---

[6]  "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed.Rule Civ.Proc. 56(e)).  Therefore, even if Plaintiff's claim were not dismissed under Rule 12(b)(1) or 12(b)(6), Plaintiff failed to meet the Rule 56 standard of review by not providing any factual evidence sufficient to prove the elements of his claim, and summary judgment as a matter of law may be granted.

motion.  See Lester v. Natsios, 290 F.Supp.2d 11, 19-20 (D.D.C. 2003), citing Anderson v.

Liberty Lobby, Inc., 477 U.S. at 255.  "[M]atters of law rather than of fact" may be presented for

summary judgment.  Douglas v. First Nat'l Realty Corp., 437 F.2d 666, 669 (D.C. Cir. 1970).

**ARGUMENT**

**I.**    **Plaintiff Claims Fail Under the APA.**

The HHS decision, which denied Plaintiff's application to use the L. Douglas Abram

Federal Building, currently controlled by GSA, for homeless assistance programs, was not

arbitrary, capricious, an abuse of discretion, or contrary to law.  The Administrative Record

shows that HHS acted in accordance with the APA, and judgment as a matter of law should be

granted for Defendants.

**A.**    **The HHS Decision Requires Great Judicial Deference.**

The APA, 5 U.S.C. §§ 701-706, empowers a court to "hold unlawful and set aside agency

action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or

limitations, or short of statutory right."  5 U.S.C. § 706(2)(A), (C); see also Citizens to Preserve

Overton Park v. Volpe, 401 U.S. 402, 413-15 (1971).  Although the judiciary bears the

responsibility under the APA to set aside agency decisions that meet this description, see MD

Pharmaceutical, Inc. v. Drug Enforcement Admin., 133 F.3d 8, 16 (D.C. Cir.1998), "[t]he scope

of review under the 'arbitrary and capricious standard' is narrow and a court is not to substitute its

judgment for that of the agency."  Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,

463 U.S. 29, 43 (1983).  Rather, the court's task is to determine whether the agency's decision is

"within the bounds of reasoned decision making."  Baltimore Gas & Elec. Co. v Natural

8

Resources Defense Council, 462 U.S. 87, 105 (1983). This highly deferential standard presumes

the agency action to be valid. See Kisser v. Cisneros, 14 F.3d 615, 619 (D.C. Cir. 1994); see also

International Broth. of Teamsters v. United States, 735 F.2d 1525, 1534 (D.C. Cir. 1984). Thus,

a reviewing court may not set aside an agency's decision that is rational, based on a consideration

of the relevant factors and within the scope of authority delegated to the agency by statute.

Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. at 43; Nebraska Dep't of

Health & Human Servs. v. U.S. Dep't of Health & Human Servs., 340 F. Supp. 2d 1, 24 (D.D.C.

2004)(affirming agency's decision when a "rational connection between facts found and choices

made").

    Furthermore, "[w]hen an agency interprets its own administrative regulation promulgated

under the statute charged to its administration, [a] court owes a high degree of deference." Jersey

Shore Broadcasting Corp. v. FCC, 37 F.3d 1531, 1536 (D.C. Cir. 1994); see also Lyng v. Payne,

476 U.S. 926, 939 (1986) ("agency's construction of its own regulations is entitled to substantial

deference"); Chevron v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844 (1984).

"[T]he well-reasoned views of the agencies implementing a statute 'constitute a body of

experience and informed judgment to which courts and litigants may properly resort for

guidance,'" Bragdon v. Abbott, 524 U.S. 624, 642 (1998)(quoting Skidmore v. Swift & Co., 323

U.S.134, 139-140 (1944)). Courts "have long recognized that considerable weight should be

accorded to an executive department's construction of a statutory scheme it is entrusted to

administer, and the principle of deference to administrative interpretations." Chevron, 467 U.S.

at 844 (1984); see also Yellow Transp. Inc. v. Michigan, 537 U.S.36 (2002) (holding that the

agency's interpretation of the statute it was charged with implementing was a permissible reading of the statutory language and reasonably resolved any ambiguities).

Defendants' administration of the McKinney Act scheme, interpretation of their own administrative regulations promulgated under that scheme, and the decision in this case as to Plaintiff's application are entitled to such judicial deference.  HHS reviewed Plaintiff's application using the five evaluation criteria set forth in 45 C.F.R. § 12a.9(e)(2): services offered, need, implementation time, experience, and financial ability.  See Exh. A at 1 (Exh. 42, AR 1749-54); 45 C.F.R. § 12a.9(e)(2).  Accordingly, HHS properly applied its own regulations and utilized its own "body of experience and informed judgment" for guidance when it decided to deny Plaintiff's application in this case.  Id.; Bragdon,524 U.S. at 642.  HHS's determinations that Plaintiff's application failed to describe the type of programmatic infrastructure necessary to support the wide range of proposed services and failed to make a satisfactory showing that Plaintiff holds the relevant experience and financial ability to operate and implement Plaintiff's proposed program are determinations peculiarly within HHS's expertise of public health infrastructure and facilities.  See Exh. A at 1 (Exh. 42, AR 1749-54); see also 40 U.S.C. §§ 550(a)-(d); 45 C.F.R. Part 12; Exh. B, HHS 2004 United States Interagency Council on Homelessness at 1.  As set forth in more detail below, because the Administrative Record supports the decision in this case, the Court should allow HHS's decision great judicial deference.

> **B.      Because HHS's Decision Was Not Arbitrary, Capricious, Or An Abuse Of Discretion, It Should Be Upheld.**

The HHS decision denying Plaintiff's application is both "reasonable and consistent" with the McKinney Act and accompanying regulatory scheme, and thus the Court should defer to HHS's evaluation. The Administrative Record shows that HHS thoroughly examined Plaintiff's voluminous application. See, e.g., Exh. 10, 11 (AR 265-1571). HHS properly exercised its discretion to deny Plaintiff's application and properly set forth the grounds for its decision in detail. Exh. A (Exh. 42, AR 1749-54). HHS in no way acted in an arbitrary or capricious manner. Therefore, Plaintiff's claims under the APA must fail.

_____The administrative record reflects that Plaintiff's application, which was filed February 14, 2005 with HHS, contained a voluminous amount of material concerning Plaintiff's proposed program for the Abram Federal Building, including multiple attachments, a signature petition and a video cassette presentation. Exh. 10, 11 (AR 265-1571). Upon receiving Plaintiff's application, HHS officials engaged in 60 days of internal deliberations in order to evaluate the application according to the criteria promulgated in the regulation. See 45 C.F.R. § 12a.9(e); see also Exh. 12-41 (AR 1572-1747). Although HHS determined that Plaintiff's filed application was technically complete, HHS determined that the application was materially deficient with regard to three of the five evaluation criteria: "services offered," "experience," and "financial ability." See Exh. A (Exh. 42, AR 1749-54); see also 45 C.F.R. § 12a.9(e)(2). Thus, HHS ultimately issued a 6-page decision letter denying Plaintiff's application. Exh. A (Exh. 42, AR 1749-54). The decision letter thoroughly reviewed each aspect of Plaintiff's application and articulated each deficiency with reference to the application's content and the regulation's review criteria. See id.

11

First, despite Plaintiff's allegations to the contrary, HHS properly determined that Plaintiff's application insufficiently established Plaintiff's financial ability to run the proposed program and facility operations at the Abram Federal Building.  See Compl. ¶ 34; Exh. A at 4-6. Plaintiff alleges that "among other sources of funding...its media assets of over $40 million dollars" are sufficient funds to operate the proposed program of use, and improve and operate the Abram Federal Building.  Compl. ¶ 34.  However, HHS properly concluded that Plaintiff's application "severely underestimated" the costs for the proposed program and facility operations. The decision noted that the acquisition and operation of the Abram Federal Building would be an enormous undertaking for any homeless service provider.  Exh. A at 4-6.  The 481,024 square foot facility, originally designed to furnish federal office space 45 years ago, has deteriorated to the point that the government has concluded a complete renovation will now cost $49,000,000. See Exh. 18 (AR 1609-13), 22 (AR 1635), 24 (AR 1640), 25 (AR 1642), 26 (AR 1644) and 56 (AR 1895-2162); see also Exh. A at 5.  Furthermore, HHS concluded that, based upon the entire record, Plaintiff failed to make a sufficient showing under Title V's "financial ability" review criteria.  Exh. A at 4-6.  An applicant's identification of funding sources that are speculative or not susceptible to reasonable estimation do not make the necessary showing "of the adequacy of funding that will likely be available to run the program *fully* and *properly* and to operate the facility."  45 C.F.R. § 12a.9(e)(2)(v)(emphasis added).  HHS's review determined that notwithstanding Plaintiff's purported $40 million dollars in media assets, for example, over eighty percent of the first-year funding identified in the application ($3,550,000 of the budgeted revenue of $4,300,000) was to be acquired through fund-raising, grant awards or in-kind

12

donations.[7]  Exh. A at 5.   HHS also concluded that the application failed to show that Plaintiff successfully raised funds in the past.  Id.   Thus, the determination that the application insufficiently established Plaintiff's financial ability to run the proposed program and facility operations was neither arbitrary nor capricious, and was instead a rational conclusion based on an analysis of the entire record.  Exh. A.

Second, the decision properly found that Plaintiff's application revealed "deficiencies in the professional staffing plan for a program of this magnitude."  Exh. A at 2.  Plaintiff's representations that several staff positions would increase "as demand increases," only serve to bolster HHS's conclusions.  Compl. ¶ 34e.  The regulation's "services offered" evaluation element requires an applicant to show the "*extent* and *range* of proposed services, such as meals, shelter, job training and counseling." 45 C.F.R. § 12a.9(e)(2)(I) (emphasis added).  HHS's review concluded that the application's staffing plan constituted a "key deficiency" in the extent and range of proposed services that would preclude Plaintiff from successfully administering the proposed program in the Abram Federal Building.  Exh. A at 2.  In order to assess the efficacy of the application's staffing plan, the HHS decision and record show that the Department first identified the proposed service population and its needs, and then determined whether the extent and range of proposed services was sufficient to meet the population's needs.  See Exh. A at 2-3;

---

[7]  As noted in the HHS decision, Plaintiff's decision not to participate in the St. Louis Continuum of Care Network is significant.  Exh. A at 5.  Although HHS does not require that Title V applicants participate in their local continuum of care network, Plaintiff's decision to opt-out of the Network rendered it ineligible to receive McKinney Act Title IV grant awards, the largest Federal funding stream for homeless assistance.  Id.  If Plaintiff were eligible for Title IV funding and expressed an intent to apply for a grant, HHS would have been required to accept its intent to apply as sufficient evidence of financial ability under 45 C.F.R. § 12a.9(e)(2)(v).  See National Law Center on Homelessness and Poverty, et al. v. U.S. Dep't of Veterans Administration, 819 F.Supp. 69, 74  (D.D.C. 1993).

see also Exh. 49 (AR 1783-87), 50 (AR 1789-1857). The HHS decision explains that its analysis

of the application's staffing plan incorporated the Assertive Community Treatment (ACT)

model, which is a widely accepted mental illness case management model. See Exh. 50 at AR

1811. HHS utilized this prevailing standard as a benchmark for its evaluation of this case. Exh.

A at 2-3; see also 50 (AR 1789-1857). Given the diversity and scope of the application's

proposed services, HHS's evaluation was consistent with the regulations and within its exercise

of sound discretion to determine whether the proposed staffing arrangements were sufficient to

implement the services offered. See, e.g., Nebraska Dep't of Health & Human Servs., 340 F.

Supp. 2d at 24 ("[d]eference to agency determination is particularly important where the

determination involves application of the agency's particular expertise"). Therefore, Plaintiff's

representations that additional staff would be added fails to overcome the core planning

deficiency identified in the HHS decision and fails to demonstrate that HHS's conclusion on this

review element is arbitrary or capricious.

## II.    The HHS Decision Fully Complies With The Mckinney Act And Implementing Regulations

_____Plaintiff's Complaint sets forth a series of averments maintaining that the Court should

vacate the HHS decision because it includes determinations that are contrary to the APA, the

McKinney Act and the regulations. Compl. ¶ 34. Plaintiff's averments appear to be premised on

the argument that HHS is constrained to accept all representations in a Title V application at face

value, and that any exercise of discretion by HHS to evaluate the merits of an applicant's

representations is inherently abusive. However, as set forth above, under the McKinney Act and

implementing regulations, the role of HHS in the Title V application process is to "evaluate"

applications according to the regulation's evaluation factors and make a final decision on the application. 45 C.F.R. §§ 12a.9(e). Only when HHS approves an application, must HHS request that GSA assign the property to HHS for subsequent conveyance to the applicant. 45 C.F.R.§ 12a.10(b). Plaintiff's contention that HHS must accept the application's representations as stated is without any basis in law and has no merit.

The Complaint incorrectly alleges that Defendants HHS and GSA failed to give priority to Plaintiff's application as required by 42 U.S.C. § 11411(f)(3)(A).[8] Compl. ¶ 34a. An HHS decision to deny a Title V application precedes any consideration of competing federal needs or disposal uses. See 42 U.S.C. § 11411(f); 45 C.F.R. § 12a.9(c), (e). Under 42 U.S.C. § 11411(f) and implementing regulations, HHS is not authorized to consider other disposal venues for a Title V property unless and until the Department has approved an application, and then only under very limited conditions. 42 U.S.C. § 11411(f)(3)(A); 45 C.F.R. § 12a.10(b). The same limitation and conditions apply to GSA. Id. Once HHS has approved an application, the government must ultimately dispose of property by deed or lease under Title V unless a competing request is subsequently sustained. 42 U.S.C. § 11411(f). The purpose of 42 U.S.C. § 11411(f)(3)(A) is to ensure that when HHS has approved an application, uses that assist the homeless are afforded priority of consideration relative to other disposal venues:

> In disposing of surplus property by deed or lease under sections 541 to 555 of Title 40, [GSA and [HHS] shall give priority of consideration to uses to assist the homeless, unless [GSA] or [HHS] determines that a competing request for the property under section 550 of Title 40 is so meritorious and compelling as to outweigh the needs of the homeless.

---

[8] Plaintiff's Complaint incorrectly cites to 40 U.S.C. § 11411(f)(3)A). Title 40 codifies sections of the Federal Property and Administrative Services Act 0f 1949.

42 U.S.C. § 11411(f)(3); see also 45 C.F.R. § 12a.10(b)(2) (providing that prior to assignment

HHS and GSA may also consider "other Federal uses and other important national needs" but

"GSA will generally give priority of consideration to uses to assist the homeless."). In this case,

HHS denied Plaintiff's application based upon its determination that the application was

materially deficient with regard to three of the five evaluation criteria set forth in 45 C.F.R. §

12a.9(e)(2). See Exh. A (Exh. 42, AR 1749-54); see also 45 C.F.R. § 12a.9(e)(2). HHS

explained this evaluation of Plaintiff's application in a 6-page decision letter. Exh. A (Exh. 42,

AR 1749-54). Both the HHS decision letter and the entire Administrative Record show that the

HHS decision to deny Plaintiff's application was not based upon any alleged consideration of

competing disposal uses. Plaintiff's allegation that the government somehow failed to accord

priority to its application is irrelevant to this court's review of the HHS decision denying

Plaintiff's application.

  Furthermore, Plaintiff's Complaint alleges that the HHS decision ignored the regulations

in reaching its conclusion because HHS relied on information from the City of St. Louis

officials. Complaint at ¶¶ 28, 34b. However, the entire record shows that HHS conducted an

independent, objective analysis of Plaintiff's application and in no way relied on or incorporated

any of the City of St. Louis filing's assertions. HHS received an unsolicited document entitled

"City of St. Louis Filing in Opposition to McKinney Act Application," dated February 22, 2004,

and signed by Francis G. Slay, Mayor of St. Louis ("the St. Louis filing"). Exh. 57 (AR 2163-

2243). An HHS official reviewed the document and drafted handwritten notes and a brief

summary of the St. Louis filing. Exh. 46 (AR 1765-68), 63 (AR 2256-2257-A).

There is no evidence in the record, or from any other source, supporting plaintiff's claim that the

HHS decision used or relies upon any document submitted to HHS by the City of St. Louis or

any non-federal third party. HHS responded to the St. Louis filing in a letter to the Mayor, which

stated that HHS had received St. Louis's opposition to Plaintiff's application, and that HHS was

performing "a thorough and objective evaluation" of Plaintiff's application. Exh. 60 (AR 2251).

The HHS decision itself shows that HHS carefully related its findings of fact on Plaintiff's

application to the application review criteria set forth in the regulations. See Exh. A.

Accordingly, the HHS decision complied with 45 C.F.R. § 12a.9(c), which required HHS to rely

primarily on information contained in the application. 45 C.F.R. § 12a.9(c)("[d]ue to the short

time frame imposed for evaluating applications, HHS' evaluation will, generally, be limited to

the information contained in the application.")[9] The fact that American Citizens and state and

local governments may petition the federal government to act in their interests, and that HHS and

GSA cannot preclude these petitioners from phoning and writing to express their views on

pending government business, does not dispute that Defendants in this case complied with all

applicable statutes and regulations.

In addition, despite Plaintiff's claims to the contrary, even if Plaintiff had met all of the

five review criteria in 45 C.F.R. § 12a.9(c), a mere showing under those criteria is not legally

sufficient to require HHS to approve Plaintiff's application. See Compl. ¶ 34c. The regulations

implementing the McKinney Act cite that Title V application review is an "evaluation." 45

---

[9] Although HHS primarily relied on information contained in Plaintiff's application, this is not, as Plaintiff suggests, an absolute rule. As discussed more fully in this memorandum *infra*, HHS may determine that an objective evaluation of an application on the merits necessitates reference to relevant social science research and standards.

C.F.R. § 12a.9(c) and (e). No meaningful "evaluation" can be accomplished without the application of appropriate expertise and judgment within the boundaries of sound discretion and consistent with the regulation's criteria. As stated above, HHS is entitled to substantial deference in this interpretation of its own regulations, and its interpretation of 45 C.F.R. § 12a.9(c) is in no sense plainly erroneous or inconsistent with the regulation. See Jersey Shore Broadcasting Corp., 37 F.3d at 1536.

Plaintiff's Complaint cites "a preference for the ACT case-management model, security-personnel requirements, and participation in the St. Louis Continuum of Care Network" as examples of "new application requirements," which Plaintiff alleges HHS illegally created. Compl. ¶ 34c. The essence of Plaintiff's challenge to the HHS decision is that Plaintiff was not on notice that HHS would not accept the application's representations at face value. However, as discussed above, Congress delegated to HHS the authority to review Title V applications because the agency exercises substantial expertise in health facilities infrastructure and homeless assistance policy. See 40 U.S.C. §§ 550(a)-(d); 45 C.F.R. Part 12; Exh. B, HHS 2004 United States Interagency Council on Homelessness at 1. HHS promulgated and routinely applies broadly conceived application review criteria in order to objectively evaluate Title V applications. See 45 C.F.R. § 12a. A myriad of expert judgments are necessary for HHS to reach rational, objective conclusions regarding whether a provider has conceived a successful plan to deliver the proposed services. In this case, under the "services offered" criterion, HHS utilized the ACT case-management model[10] as a benchmark for evaluating whether the application's case

---

[10] The ACT model presents an established standard, which HHS may properly consider in evaluating Title V applications. See Substance Abuse and Mental Health Services Administration, *Assertive Community Treatment Implementation Resource Kit* (2003, draft

management plan proposed a sufficient "extent and range of proposed services" – the promulgated criteria. Exh. A at 3; Exh. 50 (AR 1788-1857); 45 C.F.R § 12a.(e)(2)(I).

Specifically, HHS properly utilized its expertise and background by pointing out that under Plaintiff's application's plan, there would have been 88 hours per week with a complete absence of trained security staff on duty. Exh. A at 3. Such an observation fails to establish that HHS applied any "new application requirements," but instead shows that HHS conducted a thoughtful and thorough review of Plaintiff's proposed program. Furthermore, participation in the St. Louis Continuum of Care Network is voluntary, and HHS has never required that a Title V applicant participate in the local continuum of care. Exh. 47 (1770-73), 49 (AR 1782-87). Rather, as set forth in the HHS decision, the consequences of electing not to participate are undeniably relevant to assessing an applicant's financial ability where, as here, alternative sources of adequate funding are not reasonably certain. See Exh. A at 5-6; see also Exh. 47 (1770-73), 49 (AR 1782-87). In this case, there is no dispute that Plaintiff received actual notice of the regulation's lawfully promulgated application review criteria in its application package. Compl. ¶ 21; Exh. 5 (AR 35-56). Therefore, any of Plaintiff's allegations that HHS somehow created "new application requirements" is unsupported by the record and should be dismissed.

## III.    Even If Plaintiff Were To Prevail On Any Of Its Claims, Plaintiff Is Not Entitled To The Relief Requested In Plaintiff's Complaint.

Plaintiff's Complaint seeks declaratory or injunctive relief, requesting that the Court "enjoin the Defendants from transferring the property . . . to any other person or entity," that the

---

version), available at http://www.mentalhealth.samhsa.gov/cmhs/communitysupport /toolkits/community. ACT is also endorsed by the National Association on Mental Illness (NAMI) (http://www.nami.org/Template.cfm?Section=ACT-TA_Center) and supported by the Robert Wood Johnson Foundation (http://www.rwjf.org/reports/grr/044030.htm).

Court "order that HHS either approve New Life's application or give New Life a full and fair opportunity to submit additional evidence . . .," and that the Court "[o]rder HHS to recuse all individuals involved in the April 15, 2005 Final Decision from involvement in any subsequent decision involving New Life."  Compl. at 13.

Mandamus and/or injunctive relief is not available in this case.  Mandamus is "an extraordinary remedy to be reserved for extraordinary situations."  Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 289 (1988); Cobell v. Norton, 334 F.3d 1128, 1137 (D.C. Cir. 2003).  To meet the mandamus standard, there must be: 1) a clear right to relief; 2) a plainly defined and nondiscretionary duty on the part of the defendant; and 3) no other adequate remedy available.  Gilbert Equipment Co. v. Higgins, 709 F. Supp. 1071, 1089 (S.D. Ala. 1989); see also Ganem v. Heckler, 746 F.2d. 844, 852 (D.C. Cir. 1984) (citing United States ex rel. Girard Trust Co. v. Helvering, 301 U.S. 540, 543 (1937)); Whittle v. Moschella, 756 F. Supp. 589, 596 (D.D.C. 1991).

As discussed above, Plaintiff cannot establish a clear right to the requested relief, approval of its application to acquire the federal property at issue here.  Defendants owe no plainly defined or nondiscretionary duty to Plaintiff, as the decision to approve or deny a Title V application is within the discretion of HHS.  See 45 C.F.R. § 12a.9.  Additionally, Plaintiff cannot establish that his only adequate remedy is the requested injunctive relief, and Plaintiff presents no extraordinary or exceptional circumstances justifying its issuance.  Therefore, even if any of Plaintiff's claims were substantiated, the only appropriate remedy in this case is remand.

20

**CONCLUSION**

Defendants are entitled to summary judgment as a matter of law because the relevant facts within the scope of judicial review are undisputed in the record, and Defendants have fully complied with prevailing law, including the requirements of the APA, the McKinney Act and implementing regulations.  For all of the foregoing reasons, Defendants respectfully request summary judgment for Defendants.

Respectfully submitted,

/s/
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney

/s/
R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney

/s/
MEGAN L. ROSE, N.C. Bar # 28639
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. - Civil Division
Washington, D.C.  20530
(202) 514-7220

Of Counsel:

Christian C. Mahler, Senior Attorney
Office of the General Counsel, Public Health Division
U.S. Department of Health & Human Services

Samuel E. Skare, Regional Counsel (6L)
U.S. General Services Administration

21